LAW OFFICE OF ROBERT D. McCREANOR, P.L.L.C.
245 SAW MILL RIVER ROAD
SUITE 106
HAWTHORNE, NY 10532
(845) 202 1833
www.rdmclegal.com

August 1, 2022

Hon. Steven I. Locke
United States Magistrate Judge
United States District Court for the New York Eastern District
Courtroom 820
100 Federal Plaza
Central Islip, NY 11722

*Submitted Via ECF*

Re: Barrios v. Qwik Logistics Group LLC et al, 2:22-cv-02296-AMD-SIL

Dear Magistrate Judge Locke,

I represent the Plaintiff in this matter. The parties have recently reached a settlement agreement of Plaintiff's claims against Defendants Qwik Logistics Group LLC, ("Qwik Logistics"), Daniel Catelmo ("Catelmo") and John Yancigay ("Yancigay") (collectively referred to herein as "Defendants"), which include overtime claims brought under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*. In accordance with *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir 2015), the aforementioned parties respectfully seek approval of the settlement agreement, attached hereto as Exhibit A.

*Brief Background*

Plaintiff worked for Defendants from August 2020 through the date of the commencement of this action as a delivery driver and, for a shorter period of time, as a warehouse worker in their online grocery delivery business.[1] (ECF Dkt. 1 at ¶¶ 23-24) Plaintiff was classified by Defendants as an "independent contractor" and paid a single hourly rate for all hours worked. Plaintiff alleges that he was, in fact, an employee of Defendants and not paid the required New York State (NYS) minimum and/or NYS and federal overtime wages for all his hours worked, was not paid all of his earned tips, was not paid a spread of hours premium and

---

[1] Plaintiff's employment was terminated subsequent to the commencement of this action. Plaintiff was notified, though counsel, in advance of his termination and provided with documentary evidence that Defendants were closing their delivery business and that their warehouse clients were eliminating their temporary staffing positions.

was never provided with the hiring notice and wage statement required by New York Labor Law (NYLL). (*Id*. at pp. 5-9)

Defendants dispute Plaintiff's allegations and maintain that he was at all times an independent contractor and, therefore, not entitled to the statutory protections on which he relies in this action. (ECF Dkt. 13, p. 7). Defendants assert that Plaintiff was paid all of his earned tips and provided with accurate wage statements. (*Id*. at pp. 7-8)

### Settlement of Plaintiff's Claims Against Defendants

Upon Defendants' filing of their Answer in this action, counsel for all parties began communication by telephone and agreed to informally exchange evidence, principally Defendants' time and pay records pertaining to Plaintiff and Plaintiff's damages calculations), for the purpose of exploring an early resolution of the case. At the same time, counsel for the Defendants informed me that Defendants were closing all of their business operations due to economic circumstances. Defendants provided me with documentary evidence to corroborate this assertion including proof of surrender of Defendants' Department of Transportation license and written correspondence with Defendants' warehouse clients.

As the Court is aware, an examination of whether an agreement is fair and reasonable under *Cheeks* involves consideration of "(1) the plaintiff['s] range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." See Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted).

The parties have agreed to settle for $45,000 which represents a substantial portion of what Plaintiff would seek to recover at trial. Of this amount, $29,553.47 will be paid to Plaintiff[2] and $15,446.53 will be paid to Plaintiff's counsel, as discussed in further detail below. The settlement agreement provides that if Defendants fail to make payment timely, judgment will be entered jointly and severally against Defendants in the amount of $90,000, minus any payments made and all other appropriate enforcement of the settlement agreement.

Based on Plaintiff's recorded work hours and his pay, Plaintiff's counsel has calculated that Plaintiff could be entitled to between $11,611.97 and $17,465.73 in unpaid wages depending on the determination of Plaintiff's regular rate of pay and how his payments are allocated between tips and wages. I calculated these amounts by constructing a spreadsheet and inputting Plaintiff's work hours and pay received for each pay period. I then input formulae to calculate Plaintiff's anticipated or earned wages (including overtime rate for hours over 40) based upon Defendants' representations as to Plaintiff's hourly rate of pay in each time period. I then subtracted Plaintiff's pay received (according to what Defendants told Plaintiff was his hourly

---

[2] As there exists a bona fide dispute as to the employee/independent contractor status of Plaintiff, all payments will be made to Plaintiff on a 1099 basis.

pay and not including amount labelled by Defendants as "tips") from the anticipated (or earned) wages amount. This methodology yields an amount of unpaid wages equal to $17,465.73. I also ran an alternative calculation that determined Plaintiff's owed wages by crediting Defendants for all payments not labelled as tips and disregarding Defendants' representations to Plaintiff as to their methodology for allocating tips and other compensation. This approach yields an amount of unpaid wages equal to $11,611.97.

Plaintiff's counsel has calculated that Plaintiff could be entitled to between $2,000 and $7,000 in unpaid tips depending on a determination of how gratuities were handled by Defendants. At trial, Plaintiff would also seek to recover an equal amount in liquidated damages, prejudgment interest and $10,000 in statutory penalties for NYLL hiring and wage notice violations. But if a finder of fact were to conclude that Plaintiff was an independent contractor, he would recover nothing in unpaid wages and no statutory penalties.

By the terms of the settlement agreement, Plaintiff will receive 100% of his maximum possible recovery for unpaid wages, 100% of his maximum possible recovery for hiring and wage notice violations, and a portion of his possible recovery for unpaid tips and/or liquidated damages.

Plaintiff is a low-wage worker who is primarily interested in a monetary settlement which would allow him to quickly receive what he believes is owed to him, without the need to engage in protracted litigation and potentially jeopardize his current income and employment due to the need to miss work to prosecute his case. Defendants have consistently maintained that, regardless of their liability, their business is closing and there are unlikely to be sufficient assets to readily satisfy a judgment. While the individual Defendants may possess assets, it is reasonable to conclude that any judgment enforcement process in this case would be challenging and lengthy.

The settlement amount as agreed upon by the parties is significant considering (a) the inherent risks of litigation in this context where there exists a dispute as to the employee status of the Plaintiff, (b) the likelihood that any larger judgment amount would not be satisfied without a protracted judgment enforcement effort, and (c) the judgment enforcement provisions contained within the settlement agreement. The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particular sum." *Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal citations and quotations omitted).

The settlement is the result of arm's-length bargaining and that there is no fraud or collusion as evidenced by the settlement amount in relation to Plaintiff's maximum possible recovery. Plaintiff's counsel is an experienced Plaintiff-side employment litigator and was able to identify the information necessary to thoroughly and accurately calculate damages.

### *Attorney's Fees and Costs*

Of the settlement amount, $15,446.53 will be paid to Plaintiffs' counsel, $669.80 to reimburse counsel for costs of the litigation, and $14,776.73 in attorneys' fees.

The costs in this case were reasonable and required for the case to go forward. Specifically, Plaintiff's counsel advanced a total of $669.80, broken down as follows: $402 (filing fee) and $267.80 (service of process on all Defendants).

The attorneys' fees of $14,776.73 are also fair and reasonable. Plaintiff agreed, upon retaining Plaintiff's counsel, that counsel may receive a "contingent fee of One-Third (1/3) or less as provided by Court Rules, of the net recovery of damages to [Plaintiff], i.e. less any expenses and costs." Plaintiff's counsel has worked more than 18 hours on this matter and my most recently approved hourly rate in a FLSA case is $500 per hour. *See Luna Martinez et al v. K&P Facilities Maintenance Inc. et al.* 7:21-cv-09987-PMH  (S.D.N.Y.)(ECF Dkt. 40). My lodestar in this case is, therefore, at least $9,000 and my fee request seeks a multiplier of 1.64.

"[A]dequate compensation for attorneys who protect wage and hour rights furthers the remedial purpose of the FLSA' by attracting counsel to take on workers' cases." *Alvarez v. Sterling Portfolio Inv., LP*, No. 16-CV-5337, 2017 WL 8790990, at *5 (E.D.N.Y. Dec. 13, 2017) (*quoting Henry v. Little Mint, Inc.*, 12-CV-3996, 2014 WL 2199427, at *15 (S.D.N.Y. May 23, 2014)). Courts have held that a one-third contingency-fee award is "presumptively" enforceable, and such fees have often been found to be fair and reasonable in light of the FLSA's statutory purposes. *Angamarca v. Hud-Moe LLC*, No. 18-CV-1334, 2018 WL 6618412, at *1 (S.D.N.Y. Dec. 17, 2018). A lodestar multiplier of 1.74 is in line with the generally accepted range in FLSA cases. *Montalvo v. Flywheel Sports, Inc.*, 2018 WL 7825362, at *6 (S.D.N.Y. July 27, 2018) ("Given that courts in this district will often approve lodestar multipliers between two and four times, counsel's requested fee appears reasonable.")

For the reasons stated above, I respectfully request that the Court approve the attached settlement agreement.  Thank you for your consideration.


Respectfully submitted,


/s/ Robert McCreanor


Attorney for Plaintiff Frank Barrios